UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

NO. 05CV40155-MAP

_____

MILLIVISION, INC.,
Debtor/Appellant

VS.

JEFFERY W. ALHOLM,
Claimant/Appellee

_____

ON APPEAL FROM A DECISION OF THE
BANKRUPTCY COURT FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

_____

DEBTOR/APPELLANT'S BRIEF

John C. Sikorski, Esq. of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301 Fax (413) 785-4658
BBO NO. 461970

410108

TABLE OF CONTENTS

I.    STATEMENT OF THE BASIS OF APPELLATE JURISDICTION
      ...........................................1

II.   STATEMENT OF THE ISSUES PRESENTED AND STANDARD OF
      REVIEW.....................................1

      A.  Statement Of The Issues Presented........1

      B.  Standard Of Appellate Review.............1

III.  STATEMENT OF THE CASE......................2

      A.  The Course of Proceedings Below..........2

      B.  Statement of Facts.......................3

IV.   ARGUMENT...................................8

      A.  Summary of Argument......................8

      B.  The Bankruptcy Court Misapplied The Burden
          Of Proof Viewing The Issue As One Of
          Damages Rather Than Complying With A
          Condition Precedent......................9

      C.  The Plaintiff Did Not Meet His Burden Of
          Proving He Made Diligent Efforts To Find
          Comparable Employment Nor That He Certified
          It......................................15

V.    CONCLUSION................................16

FEDERAL CASES

*Campbell Soup Co. v. Desatnick*, 58 F. Supp. 2d
    477, 492 (1999) .................................. 11

*Hope Furnace Associates, Inc. v. FDIC*, 71 F.3d
    39, 43 (1995) ................................... 12

*LaRoche v. Amoskeag Bank,* 969 F.2d 1299, 1301 (1st
    Cir. 1992) ....................................... 1

STATE CASES

*Assad v. Berlin-Boylston Regional School
    Committee*, 406 Mass. 649, 656 (1990) ............. 9

*Block v. Bryon Center Public* Schools, 2000 WL
    33419338, *2 (Mich. App. 2000) .................. 11

*Cheschi v. Boston Edison Co.,* 39 Mass. App. Ct.
    133, 142 (1995) ................................. 14

*City of Salem v. Mass. Commission Against
    Discrimination*, 44 Mass. App. Ct. 627, 645
    (1998) .......................................... 10

*Glazer v. Schwartz*, 276 Mass. 54, 56 (1931)........ 14

*Jewitt v. Warriner*, 237 Mass 36, 37 (1921)......... 14

*Mass. Municipal Wholesale Electric Co. v. Town of
    Danvers*, 411 Mass. 39, 45 (1991) ............... 12

*Paratore v. John Hancock Mutual Life Ins. Co.,*
    335 Mass. 632, 634 (1957) ....................... 14

*Pomroy v. Gold*, 43 Mass. (2 Metc.) 500, 501
    (1841) .......................................... 14

*Smith v. Graham Refrigeration Products Co.,* 333
    Mass. 181, 184 (1955) ........................... 14

*Tilo Roofing Co. v. Pellerin*, 331 Mass. 743, 746
    (1954) .......................................... 14

*Urrea v. New England Tea and Coffee Co.,* 2000 WL
    33674441, *3 (Mass. Super. 2000) ................ 10

<u>FEDERAL STATUTES</u>

11 U.S.C. § 365...................................... 2

28 U.S.C. § 158(a)(1)................................ 1

<u>TREATISES</u>

*Corbin on Contracts*, Vol. 1, §633 (West 1952)... 11, 12

Restatement Second of Contracts § 226, comment a
    (1981) ......................................... 12

## I. <u>STATEMENT OF THE BASIS OF APPELLATE JURISDICTION</u>

The Debtor, Millivision, Inc., files this appeal to the United States District Court pursuant to 28 U.S.C. § 158(a)(1).

## II.  <u>STATEMENT OF THE ISSUES PRESENTED AND STANDARD OF REVIEW</u>

### A.  <u>Statement Of The Issues Presented</u>.

Whether the Bankruptcy Court improperly allocated the burden of proof to the Debtor on the issue of whether the claimant, Jeffery W. Alholm, made diligent efforts to secure comparable employment and certified that he had done so, so as to be eligible to receive additional monthly severance payments between July 1, 2003 and January 1, 2004; and, if so, whether a reasonable trier of fact could find that the claimant, Jeffery W. Alholm, met his burden of proof so as to entitle him to additional severance payments from the Debtor after July 1, 2003.

### B.  <u>Standard Of Appellate Review</u>.

On appeal, the District Court accepts all Bankruptcy Court findings of fact unless "clearly erroneous, but reviews the legal rulings of the Bankruptcy Court *de novo.*"  *LaRoche v. Amoskeag Bank,* 969 F.2d 1299, 1301 (1st Cir. 1992).

2

### III. <u>STATEMENT OF THE CASE</u>

**A.    <u>The Course of Proceedings Below</u>.**

This appeal involves a dispute over the rights under a Severance Agreement between the Debtor and its former Chief Executive Officer, Jeffery Alholm (the "Severance Agreement").

This dispute arises following the sale of the assets of Millivision, Inc. (the "Debtor") by David W. Ostrander (the "Trustee"), as Chapter 11 Trustee, and later Chapter 7 Trustee, of the Debtor.  The Debtor's assets included rights under a Severance Agreement between the Debtor and its former Chief Executive Officer Alholm.  The Debtor's rights under the Severance Agreement were assumed and assigned to the buyer in connection with the sale, pursuant to 11 U.S.C. § 365.  Alholm filed a cure claim which the Trustee denied.  The Debtor asserted that no amount was due under the Severance Agreement because of "Alholm's alleged breach of the Severance Agreement." Alholm timely filed an objection seeking payment in the amount of $181,224.

The Bankruptcy Court held three days of trial and issued findings of facts and conclusions of law pursuant to Fed. R. Bank. P. 7052, as made applicable to the contested matter by Fed. R. Bank. P. 9014.  The Memorandum of Decision is Exhibit 5 to Appellant's Designation of Record on Appeal (hereinafter Exhibit 5).

3

In its Memorandum of Decision, the Bankruptcy Court ordered a cure amount in Alholm's favor of $132,170.27 which included $67,397.85 in severance pay for the time period from July 1, 2003 to November 1, 2003.  The Bankruptcy Court found that the Debtor did not carry its burden of proving that Alholm failed to mitigate his damages.  *Id.,* pp. 15-16.

Following the denial of a Motion for Reconsideration, the Debtor brings this appeal to the District Court arguing that under the terms of the Severance Agreement, Alholm had a guaranty of only six months severance pay, which provided him severance payments through July 1, 2005.  Thereafter, the express terms of the Severance Agreement required him to make good faith, diligent efforts to find comparable employment and to certify to those good faith efforts as conditions precedent to receiving additional monthly severance payments.  Alholm had the burden of proof of demonstrating compliance with these conditions, a burden he failed to carry.

The Debtor contends once the burden of proof is properly allocated, the Debtor owes the plaintiff no severance payments past July 1, 2003 and the cure amount should be reduced accordingly.

B.    **Statement of Facts**.

The Debtor is a Massachusetts corporation engaged in the development of millimeter wave imaging technology.  That

4

technology is designed to identify potentially dangerous items on the body of a person, without the need for a physical search. The Debtor hired Alholm as its Chief Executive Officer towards the end of 2001.  It terminated Alholm effective Friday, December 6, 2002.  Following significant negotiations, the parties entered into a Comprehensive Severance Agreement dated September 23, 2002 which characterized his termination as a resignation effective Friday, December 6, 2002.  See Exhibit 2 to Debtor's Designation of Record at ¶ 1 ("Exhibit 2").

The Severance Agreement provided Alholm with a series of benefits including severance pay.  The parties structured the severance pay as a variation of a "six and six" agreement, meaning that the parties guaranteed that Alholm would receive his severance pay through June 30, 2003 regardless of whether he obtained other full time employment or not. See Exhibit 2. Thus, ¶ 2(a) reads as follows:

(a) **Severance Pay.**  In consideration for the release and other promises by you set forth herein, Millivision agrees to pay Employee's salary at his current rate of $200,000.00 per year through June 30, 2003, on the same monthly basis as his salary. Employer will also pay for Employee's "insurance benefits" as described in Section 3 hereof.  Such salary and insurance benefits (collectively "Severance Pay") shall continue thereafter, on a month-to-month basis for six (6) additional months, so long as Employee shall not hold other full-time comparable employment.  Whether or not Employee begins other full-time comparable employment prior to June 30, 2003, his Severance Pay shall continue through June 30, 2003.  Should Employee begin other

full-time comparable employment after June 30, 2003, such Severance Pay shall terminate immediately, provided that if Employee's salary in his new employment is less than Employee's current rate of salary set forth herein, the Company shall pay Employee the difference on a monthly basis. *Employee agrees to make a good faith effort to obtain other employment commensurate with his experience and educational background* and to promptly notify the Company should he commence, or continue such other employment between June 30, 2003 and December 31, 2003 employment, prior to the end of this period. *As a condition to receiving additional monthly payments after June 30, 2003, he shall certify in writing to the Company that he has made diligent efforts to seek such comparable employment*. All compensation and insurance benefits provided hereunder shall terminate in accordance with the terms hereof or on December 31, 2003, whichever is sooner. (Emphasis supplied).

In ¶ 7, entitled "Noncompetition", Alholm represented and admitted that his experience and capabilities are such that he could "obtain employment in a business of a different nature than the Business of Millivision." See Exhibit 2, ¶ 7.

Both Millivision and Alholm had counsel during the negotiations leading up to this Agreement.

Alholm testified he earned <u>no</u> income in June, July, August or September, 2003. See Exhibit 1, Tr. 11-19, pp. 96-97. By the time of trial on November 19, 2004, Alholm had not filed his 2003 Federal Income Tax Return and admitted that he had not filed his 1999, 2000, 2001, 2002 Federal Income Tax Returns until after the middle of 2003. *Id.*, p. 97.

Alholm testified to considerable business experience and an impressive educational background. See generally, Trial Exhibit 1, Alholm's resume, attached as Exhibit 2 to Appellant's Designation of Record, and Exhibit 1, transcript of hearing of November 19, 2004, hereinafter "Tr. 11-19," pp. 17-18, 96-101.

That is, Alholm claimed a Bachelors of Science in Electrical Engineering from the University of Kansas and "many courses towards a Masters in Business Administration and a Masters in Electrical Engineering." *Id.*, p. 98. His resume touted active membership in the Institute of Electrical and Electronic Engineers and the Association for Computing Machinery. See Exhibit 2, Alholm resume.

Following his formal education, Alholm had a series of important positions with various companies in the image processing, computer graphics and medical instruments fields. He founded and served as CEO of a company called "Radiant Systems" which provided hospital monitoring and network equipment. Exhibit 1, Tr. 11-19, p. 99. Following that venture, he went to Necor, where he made about $2 million when he grew the company and sold it. *Id.* at 99-100. He then became CEO and founder of a company known as "Digital Ocean," which he described on his resume, Exhibit 2, as the "dominate (sic) provider of Media Access Control (MAC) network technology and chip sets for the 'wireless Ethernet' standard (IEEE 802.11)."

While at Digital Ocean, he claimed to have negotiated lucrative license arrangements and that the "same chip set, *albeit* in more mature form, still dominates the wireless marketplace with over 70% market share." According to his resume, these same chips "power over $2 billion of retail product sale." *Id.*

Immediately prior to coming to Millivision, Alholm owned his own consulting business where he "made active investments and helped manage a number of portfolio companies" – at least four. He also served as the Chief Executive Officer of KAW, Inc., and its subsidiaries, the Seed Investment and Business Incubator attached to the University of Kansas. *Id.*

In spite of this impressive background, Alholm earned no money in 2003 until October. Alholm had a divorce hearing scheduled for September, 2003. While testifying first that he helped care for his sick aunt in Indianapolis following his departure from Millivision, Alholm did manage to get married in December, 2003 to a woman he had met in Indianapolis while caring for his sick aunt. See Exhibit 1, Tr. 11–19, pp. 151–152.

Alholm testified that he tried to find other employment in the first nine months of 2003 but he lost *all* documents whatsoever relating to that search for employment in an office burglary in January, 2004. See Exhibit 1, Tr. 11–19, pp. 101–

103.  He testified that he had such documents in June, 2003 but did not forward them to his then counsel, Attorney Robert Sullivan, ostensibly because Sullivan told him the company was in breach and he need not do so.  *Id.*, pp. 102-103.

Millivision's Chief Financial Officer, William J. Caragol, never received the certification from Mr. Alholm that he was out looking for another job and knows of no one else in Millivision who received the certification from Mr. Alholm that he was out looking for comparable employment.  See Exhibit 3 to Appellant's Designation of Record, transcript of hearing, Tr. December 20, 2004, p. 74.

Alholm's then counsel did state that Mr. Alholm is "looking for work."  See Exhibit 2, plaintiff's Exhibit 25.  The Bankruptcy Court computed the severance payment owed Alholm at the rate of $547.95 per day.  See Exhibit 5, p. 17.

### IV.  <u>ARGUMENT</u>

A.  <u>Summary of Argument</u>.

In its Memorandum of Decision, the Bankruptcy Court placed the burden of proof on the Debtor to prove that the claimant Alholm failed to mitigate his damages.  See Exhibit 5, Memorandum of Decision, at pp. 8-9.  The Bankruptcy Court erred as a matter of law because the Agreement in this case contains condition precedents which were not met by Alholm, therefore

relieving Millivision from its duty of performance, specifically for making monthly severance payments after June 30, 2003.

A condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract.  Alholm had the burden of proving that he met the conditions precedent which he did not meet.  Alholm did not certify that he had been making diligent good faith efforts to find comparable employment nor did he in fact make such good faith efforts.  Given Alholm's testimony to his extraordinary education and work experience, including consulting on four different companies, no reasonable trier of fact could find that he had made good faith efforts to obtain other employment commensurate with his experience and educational background let alone "diligent efforts" to seek such comparable employment as required by paragraph 2 of the Severance Agreement.  Nor did he properly certify that he had done so.

**B.**    **The Bankruptcy Court Misapplied The Burden Of Proof Viewing The Issue As One Of Damages Rather Than Complying With A Condition Precedent**.

The general rule in employment cases is that the employer has the burden to prove the failure of the former employee to mitigate his damages.  *Assad v. Berlin-Boylston Regional School Committee*, 406 Mass. 649, 656 (1990) (claim for wrongful by a tenured teacher).  See also *Urrea v. New England Tea and Coffee*

*Co.*, 2000 WL 33674441, *3 (Mass. Super. 2000) (in a claim for sexual harassment under M.G.L. c. 151B, the plaintiff had a duty to mitigate her damages by seeking other employment, but that defendant bears the burden of proof of mitigation at trial); *City of Salem v. Mass. Commission Against Discrimination*, 44 Mass. App. Ct. 627, 645 (1998) (in a claim for race discrimination, the city as employer had the burden of proof of mitigation).

However, this case is not the typical employment case involving a claim for wrongful discharge or discrimination. Rather, this case is based on plaintiff's breach of contract claim relating to a certain Severance Agreement dated December 20, 2002.  Therefore general contract law on conditions precedent applies in this case, rather than the law relating to mitigation.

The contract in this case contains conditional payments and Alholm did not meet the required conditions.  The Agreement is a Severance Agreement which guaranteed Alholm monthly payments from January to June 30, 2003.  Thereafter, the monthly payments were conditional, not guaranteed.  The payments from July to December 2003, would be payable only if employee made a good faith effort to obtain employment and he provided the Company in writing a certification that he made diligent efforts.  The relevant portion of the contract reads as follows:

410108

> Employee agrees to make a good faith effort to obtain
> other employment commensurate with his experience and
> educational background and to promptly notify the
> Company should he commence, or continue such other
> employment between June 30, 2003 and December 31,
> 2003, prior to the end of this period. ***As a condition
> to receiving additional monthly payments*** after June
> 30, 2003, he shall certify in writing to the Company
> that he has made diligent efforts to seek such
> comparable employment." [Emphasis added]

According to the plain terms of the Agreement, Alholm

agreed to make good faith efforts to obtain other employment,

thereby creating a legal duty on his part to so act in exchange

for the continued monthly payments from July to December 2003.

Arthur L. Corbin, *Corbin on Contracts*, Vol. 1, §633 (West 1952).

See *Campbell Soup Co. v. Desatnick*, 58 F. Supp. 2d 477, 492

(1999) (stating that employer's promise to continue defendant's

salary for period during which non-compete agreement prohibits

employee from accepting employment with competitors, conditioned

on employee's good faith effort to find alternative employment,

was valuable consideration for employee's promise not to

compete.)

Furthermore, such payments were conditional on Alholm

certifying in writing to the Company that he made diligent

efforts to seek comparable employment.  Contrast *Block v. Bryon

Center Public* Schools, 2000 WL 33419338, *2 (Mich. App. 2000)

(consideration for salary payments upon termination was based on

release of claims and was not conditioned on the employee's

promise to make good-faith efforts to obtain employment).  No written certification was ever provided to the Company by Mr. Alholm, thus no payments were due after June 30, 2003.

Not even a prior breach by the Debtor entitles Alholm to severance payments after June 30.

The Agreement in this case contains a condition precedent which was not meet by Mr. Alholm, therefore relieving Millivision from duty of performance.  A "condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract." *Mass. Municipal Wholesale Electric Co. v. Town of Danvers*, 411 Mass. 39, 45 (1991).  When construing a contract, the court should look at the words used by the parties to determine their intent to make a condition.  *Id.*  "Emphatic words," such as "on condition that" will create a condition precedent in an agreement.  *Id.* at 46, citing Restatement Second of Contracts § 226, comment a (1981).  Further, the intent of the parties to create a condition can be found based on consideration of "the contract as a whole."  *Id.*  "The non-occurrence of a condition will prevent the existence of a duty in the other party."  Arthur L. Corbin, *Corbin on Contracts*, Vol. 1, §633 (West 1952); See also *Hope Furnace Associates, Inc. v. FDIC*, 71 F.3d 39, 43 (1995) (defining a condition as "an event not certain to occur, which must occur, unless its non-

13

occurrence is excused, before performance under a contract becomes due").

In this case the Agreement uses the emphatic words "as a condition" thereby creating expressly a condition to continued severance payments.  Further, considering the contract as a whole, the intent of the parties is clear that the first six months of payments were guaranteed and the last six months of payments were conditional on Mr. Alholm inability, after diligent effort and written notice of such, to obtain employment.  The Agreement provides that the payments after June 30, 2003 would terminate upon Mr. Alholm obtaining full-time employment.  Further, if his new employment is at a lower salary, Millivision would pay the difference through December 31, 2003.  The entire contract as a whole reflects the parties' intent that the second six months of payment were conditional on a good faith inability of Mr. Alholm to find employment.

The requirement to "certify in writing" his diligent efforts to find employment was a condition precedent to receiving payments.  The requirement of certification reinforces the directive to Alholm that he must make diligent efforts to get comparable employment. Alholm did not make such certifications, relying solely on a single line in an e-mail from his counsel.  Thus, Millivision has no obligation to

perform under the contract and make payments after June 30, 2003.

The plaintiff's claim for payments from July to December 2003 should be denied because he has failed to meet his burden of proof showing that he satisfied all of the conditions of the contract and thus is entitled to payment. *Tilo Roofing Co. v. Pellerin*, 331 Mass. 743, 746 (1954); *Cheschi v. Boston Edison Co.,* 39 Mass. App. Ct. 133, 142 (1995), *further rev. denied*, 421 Mass. 1102 abd 1105 (1995).  In a breach of contract action, the plaintiff has the burden of proof of his performance of the terms of the contract.  *Jewitt v. Warriner*, 237 Mass 36, 37 (1921); *Glazer v. Schwartz*, 276 Mass. 54, 56 (1931).  In addition, the plaintiff bears the burden of proof to show that he has satisfied all the conditions precedent in the contract. *Pomroy v. Gold*, 43 Mass. (2 Metc.) 500, 501 (1841); *Smith v. Graham Refrigeration Products Co.*, 333 Mass. 181, 184 (1955); *Paratore v. John Hancock Mutual Life Ins. Co.*, 335 Mass. 632, 634 (1957).

In this case, Alholm has not proven that he provided the required written certifications to Millivision of his diligent efforts to seek comparable employment.  "If the condition is not fulfilled, the contract, or the obligations attached to the condition, may not be enforced." *Cheschi*, 39 Mass. App. Ct. at 142.  Thus, since Alholm has not met the conditions precedent,

he is not entitled to enforce the payment of the second six
months of severance payments.

C.   **The Plaintiff Did Not Meet His Burden Of Proving He Made
Diligent Efforts To Find Comparable Employment Nor That He
Certified It**.

As stated above, Alholm testified to an extraordinary
educational and business background, extolling a remarkable
career of business achievement, ranging from impressive
engineering jobs with major multinational companies to nurturing
a variety of start-up companies in several fields, indeed making
$2 million off the sale of one such company.

While Alholm testified to vague efforts to find a job, he
could produce not one single piece of paper in connection with
such a job search.  His excuse that every single such piece of
paper was stolen in a burglary of his office defies belief for
two reasons.  One, he testified that he had such documents but
never forwarded them to his then attorney, even though counsel
for the Debtor raised his failure to obtain comparable
employment as a major issue.  Second, it defies belief that
Alholm would not have any documents saved electronically.

Alholm failed to file his federal income tax returns for at
least four years and attempted to deliberately mislead the
Bankruptcy Court into believing that he was "taking care of a
sick aunt" when he was also courting his then second wife.
Alholm represented in the Severance Agreement that he could earn

410108

a living in a field other than millimeter wave technology and indeed testified that he had done so in at least two other significant industries.

The contract has two independent obligations – the duty to make good faith and "diligent" efforts to find comparable employment and also to certify that he had done so.

No reasonable finder of fact applying the proper burden of proof could find that he did so.

### V. CONCLUSION

The Bankruptcy Court issued an Order established a cure amount of $132,170.27 computing the amount of severance pay owed using a daily severance rate of $547.95.  The District Court should modify said Order deducting 122 days of severance pay representing the number of days in July, August, September and October, 2003. The total deduction should be $66,776.70 (122 days times a daily rate of $547.95) leaving a cure amount of $65,393.57.

THE DEBTOR/APPELLANT
MILLIVISION, INC.


By    /s/ John C. Sikorski
John C. Sikorski, Esq., of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, MA 01115
Phone (413) 732-2301
Fax (413) 785-4658
BBO No.:  461970

410108

<u>CERTIFICATE OF SERVICE</u>

I, John C. Sikorski, Esq., hereby certify that on this 26th day of September, 2005, served a copy of the above upon the parties in the action by mailing, postage prepaid, to counsel as follows:

David J. Noonan, Esq.
Counsel To Jeffrey Alholm
228 Triangle Street
Amherst, MA 01002
(via electronic notice only)

David W. Ostrander
Chapter 7 Trustee
Ostrander Law Office
P.O. Box 1237
Northampton, MA 01061-1237
(via electronic notice only)

Jefferey Alholm
515 W. Cedar Street
Zionsville, IN 46077-1305

      Subscribed under the penalties of perjury.


                          _/s/ John C. Sikorski_
                          John C. Sikorski, Esq.